# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY, as subrogee
of Golden Isles Cruise Lines,
Inc.,

     Plaintiff,

v.

AGCS MARINE INSURANCE CO., and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

     Defendants.

No. 2:19—CV-104

## ORDER

This matter is before the Court on Plaintiff New York Marine and General Insurance Company's ("New York Marine") Motion to Remand, dkt. no. 10, and Defendants AGCS Marine Insurance Co. ("AGCS") and National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") Motion to Dismiss, dkt. no. 3, and Motion to Disqualify Plaintiff's Counsel, dkt. no. 4. The motions have been fully briefed and are ripe for review. For the reasons discussed below, New York Marine's motion, dkt. no. 10, will be **GRANTED**, and the motions filed by AGCS and National Union will be **DENIED as moot**.

**BACKGROUND**

This matter arises out of a dispute between three insurance companies over the handling of a liability claim by a non-party insured. In March 2016, Robert Lowie sued Golden Isles Cruise Lines, Inc. ("Golden Isles") in the Superior Court of Glynn County, Georgia for injuries Lowie sustained while onboard a cruise ship operated by Golden Isles (the "Lowie Action"). Dkt. No. 1-1 at 20-32. At the time of the incident, Golden Isles was insured by AGCS and National Union (collectively "Defendants" or the "Primary Carriers") with an aggregate coverage limit of $1 million. See Id. ¶¶ 12-13.[1] New York Marine also insured Golden Isles under a "bumbershoot policy," which it describes as "a specialized form of excess liability insurance intended for the maritime industry." Id. ¶ 15.

In accordance with their policies, the Primary Carriers defended Golden Isles in the Lowie Action. See id. ¶ 31. Following a jury trial, Lowie was awarded a judgment of $2,236,850.28, which was affirmed on appeal by the Court of Appeals of Georgia. See id. ¶¶ 61-62. Thereafter, New York Marine paid Lowie approximately $1.6 million, reflecting the outstanding amount on the judgment

---

[1] In the Complaint appended to Defendants Notice of Removal, New York Marine inexplicably identifies AGCS and "AIG" as the primary carriers. Dkt. No. 1-1 ¶ 13. It is not clear whether AIG is perhaps a parent company of National Union; however, it is clear from subsequent filings that New York Marine intended to identify AGCS and National Union as the Primary Carriers. See Dkt. No. 10 at 2 ("AGCS and National Union issued insurance policies to [Golden Isles] to provide a primary lawyer of insurance coverage up to $1 million.").

after the Primary Carriers exhausted their limits, less defense costs. Id. ¶¶ 64-65.

In August 2019, New York Marine filed the present action in the Superior Court of Glynn County, Georgia, contending that Defendants had acted negligently and in bad faith in representing Golden Isles in the Lowie Action. See generally id. They argued that as a result of Defendants' poor representation, Golden Isles incurred a judgment in excess of the Primary Carriers' policy limits, thereby invoking New York Marine's coverage. They asserted causes of action for Equitable Subrogation (Count I), Negligent Failure to Settle (Count II), Bad Faith Failure to Settle (Count III), Punitive Damages (Count IV), and Attorney's Fees and Costs (Count V). Id.

In September 2019, Defendants filed a counterclaim in the 2019 Glynn County case, asserting causes of action for Misappropriation of Trade Secrets (Count I), Tortious Interference with Business Relations (Count II), Breach of Contract (Count III), and Invasion of Privacy (Count IV). Id. at 197-202. Thereafter, Defendants filed a Notice of Removal, removing the action to this Court. Dkt. No. 1. As ground for removal, Defendants contended that 1) this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Defendants asserted a counterclaim for misappropriation of trade secrets under 18 U.S.C. § 1836; 2) this Court has federal question jurisdiction because New York Marine's

Complaint asserts liability arising out of a marine insurance policy, over which the Court has original jurisdiction under 28 U.S.C. § 1333; and 3) this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because New York Marine, AGCS, and National Union are citizens of New Jersey, Illinois, and New York, respectively. See id. On the same day that it removed the action, Defendants also filed a motion to dismiss New York Marine's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dkt. no. 3, and a Motion to Disqualify Plaintiff's Counsel on the basis that New York Marine's counsel could be a necessary witness in the trial of Defendants' counterclaims, dkt. no. 4.

New York Marine moved to remand its action back to Glynn County Superior Court and further requested that this Court award attorney's fees and costs on the basis that Defendants' grounds for removal were frivolous. Dkt. No. 10. For the reasons that follow, the Court finds that while Defendants' removal petition was not so lacking in merit as to warrant attorney's fees, Defendants have not alleged a sufficient basis for removal. Therefore, the Court will **GRANT** New York Marine's Motion to Remand but **DENY** the request for fees.

## LEGAL STANDARD

On a Motion to remand, the party who removed the action to federal court bears the burden of establishing that federal

jurisdiction exists. <u>Diaz v. Sheppard</u>, 85 F.3d 1502, 1505 (11th Cir. 1996). The Eleventh Circuit has also instructed that the removal statute is to be "construed narrowly with doubt construed against removal." <u>Id.</u> (citing <u>Shamrock Oil * Gas Corp. v. Sheets</u>, 313 U.S. 100 (1941)).

## DISCUSSION

### I.  Defendants' Grounds for Removal

As an initial matter, two of Defendants' grounds for removal are without merit. With respect to the diversity jurisdiction ground, Defendants concede in their Notice of Removal that AGCS and National Union are citizens of Illinois and New York, respectively. Dkt. No. 1 ¶¶ 20-21. They also do not challenge New York Marine's allegation from its Complaint that New York Marine is incorporated in New York. Dkt. No. 1-1 ¶ 2; <u>see also</u> 28 U.S.C. § 1332(c) (stating that for purposes of diversity jurisdiction, a corporation is deemed a citizen of every state in which it is incorporated and every state in which it has its principal place of business). Because both New York Marine and National Union are citizens of New York, this Court plainly lacks diversity jurisdiction. <u>See</u> <u>Triggs v. John Crump Toyota</u>, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Diversity jurisdiction requires complete

diversity; every plaintiff must be diverse from every defendant.").[2]

Defendants argument that this court has federal question jurisdiction because of the trade secrets claim raised in their counterclaim also must fail. It is well-settled that federal claims raised as part of a counterclaim are not sufficient to invoke federal jurisdiction for purposes of removal. See <u>Home Depot U.S.A., Inc. v. Jackson</u>, 139 S. Ct. 1743 (2019). At best, Defendants urge the Court to disregard that principle here because they would have been entitled to come to federal court on the trade secrets claim but for the fact that filing their counterclaim was compelled under the federal rules. Defendants, however, have not cited to any authority in support of this proposition. Nor does the Court find Defendants' reasoning persuasive. The Court finds that neither the Defendants' trade secrets claim, nor any claims made as part of its counterclaim, are sufficient to create a federal question.

---

[2] The fact that Defendants allege in their Notice of Removal that New York Marine's principal place of business is in New Jersey is immaterial where, as here, New York Marine is *also* a citizen of New York. Even if this were untrue, New York Marine has explained—and Defendants have not challenged—that its principal place of business is New York. Indeed, while the Complaint alleged that New York Marine's principal place of business was New Jersey, see dkt. no. 1-1 ¶ 2, New York Marine explained in its Motion to Remand that this was a mistake, and it appended to its motion a Georgia Secretary of State filing indicating that the address for its principal place of business is located in New York, dkt. no. 10 at 2; dkt. no. 10-1 at 1. Defendants have not challenged the validity of this document.

However, Defendants argument concerning this Court's maritime jurisdiction raises more complex issues of law. In essence, Defendants argue that this Court has original jurisdiction over the claims in New York Marine's Complaint because New York Marine's claims fall under this court's maritime jurisdiction pursuant to 28 U.S.C. § 1333. At bottom, Defendants' Notice of Removal raises two separate issues: whether the Complaint invokes this Court's maritime jurisdiction and, if so, whether § 1333 maritime claims filed in state court are capable of removal. Ultimately, the Court finds that while the Complaint does raise claims that invoke this Court's maritime jurisdiction, those claims are not removable absent a separate basis for federal jurisdiction. Accordingly, remand is appropriate.

## A. Whether the Complaint invokes federal maritime jurisdiction

In determining whether a pleading invokes federal maritime jurisdiction, courts first consider the nature of the claims raised. See Coleman Co. v. Compagnie Generale Maritime, 903 F. Supp. 45, 47-48 (S.D. Ga. 1995). Where a claim arises under contract law, courts ask whether the contract "pertain[s] directly to and [is] necessary for commerce or navigation upon navigable waters." Nehring v. S.S. M/V point Vail, 901 F.2d 1044, 1048 (11th Cir. 1990) (internal quotations omitted). Alternatively, where a claim flows from tort law, courts look both to the location of the harm and its connection with maritime activity. Jerome B. Grubart

v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). This latter test contains two prongs. The location prong asks, "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." Id.; see also Broughton v. Fla. Int'l Underwriters, 139 F.3d 861, 865 (11th Cir. 1998). The connection prong contains two subparts, and asks, "(1) whether, upon assessment of the general features of the type of accident involved, the 'incident has a potentially disruptive impact on maritime commerce;' and (2) 'whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.'" Broughton, 139 F.3d 861, 865 (quoting Grubart, 513 U.S. at 534.

New York Marine argues that the tort claims alleged in its Complaint do not satisfy the location prong because the alleged acts supporting their claims "were committed by individuals on land adjusting an insurance claim" rather than on navigable water. Dkt. No. 32 at 4. In support, they cite to Broughton, in which the Eleventh Circuit held, under a similar set of facts, that the plaintiff boat owner did not invoke maritime jurisdiction in a tort claim against an a surplus line insurance broker for, inter alia, beaching its duty to inform the plaintiff that his insurance company was financially unsound. 139 F.3d at 862-63, 865. The Broughton Court found that the location test for maritime jurisdiction was not satisfied because the "tort did not occur on

8

navigable water; nor is this a case where an injury on land was caused by a vessel on navigable water." Id. at 865.

In general, Broughton supports the position that tort claims against insurance companies based on coverage disputes do not necessarily invoke maritime jurisdiction merely because those companies might insure against claims that involve traditional maritime activity. See id. ("Although there may be some connection between the alleged tort and traditional maritime activity, the location test for admiralty jurisdiction is not satisfied in this case."). However, New York Marine's pleading is distinguishable in that it alleges more than simple tort claims against Defendants. Under Count I, New York Marine asserts a claim for equitable subrogation and contends that it is "equitably subrogated in place of Golden Isles to pursue indemnification for the . . . losses caused by the Primary Carriers." Dkt. No. 1-1 ¶ 72. In Cooper v. Meridian Yachts, Ltd., the Eleventh Circuit adopted language from a district court decision stating, "[i]t is well-established that a noncontractual indemnity or contribution action . . . is within the scope of the federal courts' admiralty jurisdiction where the action is derived from an underlying maritime tort." 575 F.3d 1151,1161 (11th Cir. 2009) (quoting Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co., 60 F. Supp. 3d 1285, 1288 (M.D. Fla. 1999).

In Casino Cruises, from which that language is derived, the court held that an action by an insurance company and its insured

seeking indemnity and contribution from the manufacturer of a gangway that injured a defendant—and formed the basis for the underlying action—was sufficient to invoke federal maritime jurisdiction because "the underlying action-[the] fall from a gangway—is clearly a maritime tort.". Id. at 1286, 1288. Likewise, the act underlying New York Marine's equitable subrogation action here—injuries Lowie sustained onboard Golden Isle's cruise ship— was also a maritime tort. See Alderman v. Pacific Northern Victor, 95 F.3d 1061, 1063-65 (11th Cir. 1996)(finding that the plaintiff's suit based on a slip-and-fall while onboard a ship in navigable waters had a sufficient connection to maritime activity because the incident was "potentially disruptive upon maritime commerce and ha a "substantial relationship to maritime activity"). Accordingly, the Court finds that New York Marine's Complaint does invoke maritime jurisdiction under 28 U.S.C. § 1333.

B. **Whether New York Marine's Action is Removable**

Despite the fact that the Complaint invokes maritime jurisdiction, the Court finds that the action must nonetheless be remanded in that actions brought in state court under 28 U.S.C. § 1333 may not be removed to federal court absent an independent basis for federal jurisdiction. Some brief history is pertinent to addressing this issue. In 1789, the First United States Congress passed the Judiciary Act whereby it established the District Courts and conferred upon them, inter alia, "exclusive original

10

cognizance of all civil cases of admiralty and maritime jurisdiction." Ch. 20, § 9, 1 Stat. 76-77; see Ins. Co. v. Dunham, 78 U.S. 1, 23 (1871). This appropriation of power was consistent with that outlined in Article III, Section II of the United States Constitution, which extended judicial power to "all cases of admiralty and maritime jurisdiction." Const. art. III, § II; *see* Romero v. International Terminal Operating Co., 358 U.S. 354 (1959) (describing the judiciary act as having been "taken straight from Art. III, & II, cl.1" of the United States Constitution). However, the statute's drafters also sought to qualify the jurisdictional grant to district courts by "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Ch. 20, § 9, 1 Stat. 76-77. Generally speaking, this "savings clause" was a recognition "that some remedies in matters maritime had been traditionally administered by common-law courts of the original States." Romero, 358 U.S. at 376. However, the exact intent of the drafters in including this language has been a topic of debate. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444 (2001) (describing the history of the Judiciary Act).

Over time, courts began to outline the contours of the savings clause. For example, the Supreme Court found that proceedings *in rem* were beyond the scope of the savings clause because "an *in rem* action was not a common law remedy, but instead a proceeding under civil law." Lewis, 531 U.S. at 444 (citing The Hine v. Trevor, 4

Wall. 555, 571, 571-72, 531 U.S. 438 (1866)); see also, N.J. Steam

Navigation Co. v. Merchants' Bank of Boston, 47 U.S. 344, 390

(1848). Therefore, federal courts retained exclusive jurisdiction

over *in rem* maritime proceedings. Madruga v. Superior Court of

California, 346 U.S. 556 (1954) ("Admiralty's jurisdiction is

'exclusive' only as to those maritime causes of action begun and

carried on as proceedings *in rem*, that is, where a vessel or thing

is itself treated as the offender and made the defendant by name

or description in order to enforce a lien.") In contrast, federal

courts had only concurrent jurisdiction with state courts as it

concerned *in personam actions*. Lewis, 531at 445 (citing Red Cross

Line v. Atlantic Fruit Co., 264 U.S. 109). In *Red Cross Line* v.

Atlantic Fruit Co., the Supreme Court held,

> The 'right of a common-law remedy,' so saved to suitors,
> does not . . . include attempted changes by the states
> in the substantive admiralty law, but it does include
> all means other than proceedings in admiralty which may
> be employed to enforce the right or to redress the injury
> involved. It includes remedies in pais, as well as
> proceedings in court; judicial remedies conferred by
> statute, as well as those existing at the common law;
> remedies in equity, as well as those enforceable in a
> court of law.

264 U.S. 109, 123 (1924).

In effect, these holdings signaled that parties seeking to

bring a claim cognizable under federal maritime jurisdiction could

elect to bring that claim in state court—a "savings clause case"—

so long as the claim did not call on the state court to adjudicate

substantive changes in federal law. See Perio v. Titan Mar., No. 13-1754, 2013 U.S. Dist. LEXIS 145229, at *37 (S.D. Tex. Oct. 8, 2013) ("The savings to suitors clause has thus been held to preserve the concurrent jurisdiction of state and federal courts regarding maritime claims where the common law was competent to provide a remedy, and to afford exclusive jurisdiction to the federal courts where the common law was not so competent." (citing Madruga, 74 S. Ct. at 301).[3] However, the question remained as to how the savings clause interacted with 28 U.S.C. § 1441. In other words, could a defendant effectively reverse a plaintiff's election to bring a savings clause case in state court by removing that action to federal court?

In 1949, the Supreme Court shed some light on this question in Romero, finding that 28 U.S.C. § 1331, the federal question statute, did not confer jurisdiction on federal courts over claims rooted in maritime law. See 358 U.S. at 378. In that case, the petitioner sued four corporate defendants for injuries he sustained while working onboard a ship sailing in international waters. Id. at 355. He brought an action in the Southern District

---

[3] This issue is undoubtedly complex. Even in the early 1800's, the Supreme Court described the language of the savings clause as "peculiar" and "unfortunate." N.J. Steam Navigation Co., 47 U.S. at 390. More recently, scholars have noted that "the subject of the removability of savings clause cases is beset by theoretical difficulties that cannot be resolved by references to the cases, which are in a confused state, or by exploring the inferences of history." C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3674, at 303 (1976). However, the Eleventh Circuit has acknowledged that the Supreme Court in Romero has offered some guidance. Armstrong v. Ala. Power Co., 667 F.2d 1385, 1388 (1982).

of New York asserting claims under, inter alia, general maritime law and invoking the court's jurisdiction under § 1331. See id. at 356-58. The district court dismissed the petitioner's action—and the appellate court affirmed—finding that § 1331 was not a basis for federal jurisdiction in maritime actions and that the petitioner otherwise lacked an independent basis for jurisdiction— such as diversity. Id. at 357-58.

In affirming the district court's decision, the Supreme Court found that the Judiciary Act of 1875, which was codified in § 1331, "was taken straight from" Article III, Section II of the United States Constitution. Id. at 363. In pertinent part, Section II extends judicial power to cases "in law and equity, arising under [the] Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, or other public ministers, and counsels; [and] to all cases of admiralty and maritime jurisdiction." Id. at 364-65 (quoting Const. art. III, § II). The Court found that among these "three distinct classes of cases . . . the grant of jurisdiction over one of them does not confer jurisdiction over either of the other two." Id. at 365.

The Court also reasoned—arguably in dicta—that interpreting § 1331 to create jurisdiction for maritime actions would disrupt the framework set by the drafters of the savings clause. It explained,

> [T]he historic option of a maritime suitor pursuing a
> common-law remedy to select his forum, state, or
> federal, would be taken away by an expanded view of
> § 1331, since saving-clause actions would be then freely
> removable under § 1441 of Title 28 . . . By making
> maritime cases removable to the federal courts it would
> make considerable inroads into the traditionally
> exercised concurrent jurisdiction of the state courts in
> admiralty matters – a jurisdiction which it was the
> unquestioned aim of the saving clause of 1789 to
> preserve."

Id. at 480.

In ensuing years, courts relied on Romero to conclude that maritime actions brought in state court under the savings clause cannot not be removed absent some independent basis for federal jurisdiction, such as diversity or a separate federal question. See J. Aron & Co. v. Chown, 894 F. Supp. 697, 699, 701-02 (S.D.N.Y. 1995); see also Sea-Land v. J & W Import/Export, 976 F. Supp. 327, 329 (D.N.J. 1997). In effect, these courts concluded that plaintiffs seeking to bring a maritime claim could either "(1) invoke the federal courts' original jurisdiction over admiralty and maritime claims [or] (2) sue under the 'savings to suitors' clause in state court or in a United States district court." Sea-Land, 976 F. Supp. at 329. Where the plaintiff chose the latter option, and filed in state court, such an action could not be removed absent an independent jurisdictional ground. See id. at 329.

This interpretation of the savings clause seemed to be largely accepted until 2011 when Congress amended the removal statute. In

pertinent part, the version of § 1441 in effect when the Supreme Court decided <u>Romero</u> stated,

    (a)   Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending . . .

    (b)   Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441 (1950). In 2011, section (b) was amended to state, in pertinent part, "a civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2)(2018).

Various courts viewed the 2011 amendment as overturning the interpretation of <u>Romero</u> barring removal of savings clause cases. These courts reasoned that the second sentence of § 1441(b) at the time of <u>Romero</u> was the "Act of Congress" identified in § 1441(a) necessary to limit removal of maritime actions. <u>See</u> <u>Exxon Mobil Corp v. Starr Indem. & Liab. Co.</u>, no. 14-1147, 2014 U.S. Dist. LEXIS 82434, at *6-8 (S.D. Tex. June 17, 2014); <u>see also</u>, <u>Lu</u>

<u>Junhong v. Boeing Co.</u>, 792 F.3d 805, 817 (7th Cir. 2015).

Therefore, they concluded that the 2011 amendment eliminating that

limitation from § 1441(b) effectively opened the door for all

maritime actions to be removed. <u>See, e.g.</u>, <u>Exxon</u>, 2014 U.S. Dist.

LEXIS 82434, at *7-8. This Court disagrees with that reasoning and

finds, based on the history and jurisprudence surrounding the

savings clause, that that cases brought in state court that could

have otherwise been filed in federal court under § 1333 cannot be

removed to federal court absent an independent basis for federal

jurisdiction.

As a threshold matter, the Court notes that <u>Romero</u>'s holding

concerning federal question jurisdiction remains undisturbed.

Indeed, it is well-settled that § 1331 does not, in itself, provide

a basis to remove maritime actions.[4] <u>A.E.A. v. Volvo Penta of the</u>

<u>Ams., LLC</u>, 77 F. Supp. 3d 481, 487 (E.D. Va. 2015) ("Supreme Court

precedent indicates that federal question jurisdiction and

maritime jurisdiction are separate and distinct grounds for

jurisdiction."); <u>Walsh v. Seagull Energy Corp</u>, 836 F. Supp. 411,

414 (S.D. Tex. 1993) ("[A] maritime claim brought in State court

cannot be removed on the sole basis that the maritime claim

presents a federal question."). Instead, the more difficult

---

[4] The Court notes that Defendants' Notice of Removal relies on this court's
federal question jurisdiction as a basis for removing the maritime action.
However, for purposes of this decision, the Court will assume that Defendants
also seek to remove the action under § 1441(a), which permits removal of state
actions "of which the United States have original jurisdiction."

question is whether _Romero_'s analysis about removing savings clause cases to federal court remains sound in light of the 2011 amendment to § 1441(b). This Court finds that it does. Indeed, the _Romero_ Court was aware, at the time of its decision, of § 1441(a), which permitted removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Though the second sentence of § 1441(b), which withdrew removal jurisdiction from maritime actions for in-state defendants, was subsequently amended, _Romero_'s discussion about the removal of savings clause cases was never premised on § 1441(b). Instead, _Romero_ concluded that removing maritime cases to federal court "would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters-a jurisdiction which it was the unquestioned aim of the savings clause of 1789 to preserve." _Romero_, 358 U.S. at 372. In other words, the "Act of Congress" that limited removal jurisdiction in maritime cases under § 1441(a) was not § 1441(b), but rather the savings clause under § 1333. See _Kwabena Boakye v. NCL (Bah.) Ltd._, 295 F. Supp. 3d 1342, 1347 (N.D. Ga. 2018) ("[W]hile the previous version of section 1441 may have provided an additional reason to deny removal, the foundational barrier to removal of most _in personam_ maritime claims is the saving to suitors clause.").

<u>Romero</u>'s holding on this specific issue may have been *dicta*;[5] even so, the Court finds <u>Romero</u>'s reasoning to be sound. As early as the 1800s the Supreme Court acknowledged that the drafters of the savings clause intended to leave intact the traditional structure whereby states shared power over maritime cases with the federal government. See <u>N.J. Steam Navigation Co.</u>, 47 U.S. at 390 ("The saving clause was inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District courts might be deemed to have taken away the concurrent remedy which had before existed."); <u>see also</u> <u>Romero</u>, 358 U.S. at 376 (finding that the savings clause was a recognition "that some remedies in matters maritime had been traditionally administered by common-law courts of the original States."). To allow defendants to remove maritime cases to federal court based solely on maritime jurisdiction would effectively nullify the savings clause by enabling all maritime cases to be taken from the states at the election of the defendant. <u>See</u> <u>Pierce v. Parker Towing Co.</u>, 25 F. Supp. 3d 1372, 1382 (S.D. Ala. 2014) (finding that remanding a maritime action removed from state court "honors the balance struck in the original Congressional grant of admiralty and maritime jurisdiction" to the federal court.").

---

[5] Indeed, <u>Romero</u> was not before the federal courts on removal, but was rather filed originally in federal court under § 1331. <u>See</u> <u>id.</u> at 358.

Moreover, the distinction between maritime claims brought in state court versus federal is not inconsequential. Plaintiffs who bring maritime actions in federal court under § 1333 are not entitled to a trial by jury as they would have been had they brought those same claims in state court. See Beiswenger Enters. Corp. v. Carletta, 86 F.3d 1032, 1037) (11th Cir. 1996) (stating that a right to trial by jury is not available in admiralty cases); see also In re Complaint of Berkley Curtis Bay Co., 569 F. Supp. 1491, 1493 (S.D.N.Y. 1983) (citing Romero, 358 U.S. at 369) ("[C]laims in admiralty, for which Section 1333 supplies jurisdiction, have been traditionally tried to the court and are not entitled to a jury."); Pierce, 25 F. Supp. 3d at 1381 ("Had Plaintiffs filed the same claims in this Court, pursuant to the only basis available to them, admiralty jurisdiction pursuant to § 1333, the remedy of trial by jury would not be available."). Accordingly, plaintiffs who elect to have their savings case tried by a jury in state court would involuntarily waive that right if their action could be removed to federal court. See Palmer v. Ga. Ports Auth., No cv-416-199, 2016 U.S. Dist. LEXIS 127577, at *9 (S.D. Ga. 2016) ("[R]emoving this case to federal court on admiralty jurisdiction alone would foreclose Plaintiff's common law remedy of trial by jury on his negligence claim."); see also Pierce, 25 F. Supp. 3d at 1376 n.7 ("'[A] broad range of undefined common-law remedies . . . including . . . trial by jury, are what

the [savings] clause saves.") (quoting *Perio*, 2013 U.S. Dist. LEXIS 145229, at *38). This would not be so, however, if removal was premised on something other than maritime jurisdiction. See Palmer, 2016 U.S. Dist. LEXIS 127577, at *9 ("[W]ere an independent jurisdictional basis to exist (*i.e.*, in addition to admiralty jurisdiction), Plaintiff would not necessarily lose his common law remedy of trial by jury upon removal").

Defendants argue that the savings clause does not bar removal of maritime actions filed in state court because the clause has been construed as affording litigants "a choice of remedies, not of forums." Dkt. No. 21 at 2. For support, Defendants rely on Crispin Co. v. Lykes Bros. S.S. Co., 134 F. Supp. 704, 707 (S.D. Tex. 1955). In that case, the Southern District of Texas found that removal of an action to recover for damages to a shipment transported by boat was not barred by the savings clause. Id. at 705, 707. In support, the court relied primarily on a Supreme Court decision from 1867 called Moses Taylor. See id. (citing *Moses Taylor*, 71 U.S. 411 (1967)). However, Crispin's reliance on Moses Taylor was misplaced given that the latter case involved an *in rem* action whereby the Supreme Court essentially invalidated a California statute authorizing that state to decide certain *in rem* admiralty actions. *See* Moses Taylor, 71 U.S. at 427, 431.[6] As

---

[6] Crispin also relied on Winderlich v. Netherlands Ins. Co.,125 F. Supp. 877 (S.D.N.Y. 1954). This case seems to rely heavily on the argument that maritime actions "arise under the Constitution within the meaning of 28 U.S.C. § 1331,"

explained above, the Supreme Court has established that the savings clause preserves only common-law remedies, and an *in rem* action "is not a remedy afforded by the common law." *Id.* at 431. Therefore, the Supreme Court found that California did not have jurisdiction to enforce the statute. Id. Here, New York Marine's action is plainly *in personam*, rather than *in rem*, and Moses Taylor does not bar New York Marine's election to file in federal court under the savings clause.

At the hearing on this matter, Defendants cited—for the first time—Wilson v. Suzuki of Orange Park, Inc., a case arising out of the Middle District of Florida. No. 3:05-cv-469, 2005 U.S. Dist. LEXIS 34207 (M.D. Fla. Dec. 12, 2005). There, the court also declined to remand a maritime action originally filed in state court. See id. at *19. However, the court's decision was based on the fact that the plaintiff had not timely raised a savings clause argument as a basis for remand but had instead relied solely on the argument that the complaint did not invoke the court's admiralty jurisdiction—a contention which the court rejected. See id. at *10-11, 19. However, the court alternatively noted that, "[b]arring the existence of another ground for removal, such an *in personam* complaint would not be removable to federal court." Id.

_____

id. at 879, a premise patently rejected by Romero and its progeny. The case also mistakenly relies on Moses Taylor in interpreting the savings clause. Accordingly, the Court also finds this decision unpersuasive.

at *12. Here, New York Marine has plainly argued that the case should be remanded on the basis, inter alia, of the savings clause.

The Court finds that cases brought in state court under the savings clause may not be removed without an independent basis for federal jurisdiction. Because Defendants here have not alleged a valid independent basis for jurisdiction, New York Marine's action is remanded.

## II. Motion for Attorney's Fees

As a final matter, New York Marine moves pursuant to 28 U.S.C. § 1447(c) for an award of attorney's fees based on their efforts to have this matter remanded to state court. In pertinent part, that statutory section provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of [] removal." 28 U.S.C. § 1447(c). As a general rule, an award of attorney's fees is appropriate under this section where "the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Here, the Court notes the complex history of the savings clause. The Defendants ultimately lost the remand fight, but their efforts were not unreasonable. Accordingly, the Court will **DENY** New York Marine's request for attorney's fees.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Remand, dkt. no. 10, is **GRANTED**. Plaintiff's Motion for Attorney's fees, id., is **DENIED**.

This matter is hereby **REMANDED** to the Superior Court of Glynn County, Georgia pursuant to 28 U.S.C. § 1447(c). Furthermore, the clerk is **DIRECTED** to mail a certified copy of this Order to the clerk of the Glynn County Superior Court. Thereupon, the Superior Court will proceed with the case. The Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 7th day of April, 2020.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA